[Cite as *In re A.P.*, 2019-Ohio-1312.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| A.P. | : | |
| J.O. | : | Hon. W. Scott Gwin, P.J. |
| J.O. | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case Nos. 18 CA35 |
| | : | 18 CA36 |
| | : | 18 CA37 |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Guernsey County Court
                                  of Common Pleas, Juvenile Division,
                                  Case No. 17JC00099

JUDGMENT:                         AFFIRMED

DATE OF JUDGMENT ENTRY:           April 5, 2019

APPEARANCES:

For Appellee Guernsey Co.                    For Appellant Mother:
Children Services:
MELISSA M. WILSON                            WESLEY ALTON JOHNSON
274 Highland Ave.                            The IMG Bldg., Ste. 910
Cambridge, OH 43725                          1360 East Ninth St.
                                             Cleveland, OH 44114

*Delaney, J.*

{¶1}   Appellant S.N. ("Mother") appeals from the November 20, 2018 Journal Entry of the Guernsey County Court of Common Pleas, Juvenile Division, granting permanent custody of A.P., J.O., and J.O. to appellee Guernsey County Children Services (the "Agency").

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother has four children: A.P. (D.O.B. 07/06/07) [Child 1], J.O. (8/16/10) [Child 2], J.O. (D.O.B. 03/11/13) [Child 3], and A.N. (D.O.B. 11/15/16) [Child 4].   This appeal involves only Children 1, 2, and 3.   Child 1 has a different father than Children 2 and 3; Child 1's father had minimal contact with the Agency and is not a party to this appeal.   Children 2 and 3's Father was a party to the case below but is not a party to the instant appeal.

{¶3}   The Agency has a long history of involvement with the family and has investigated 24 reports of dependency and neglect.   The Agency worked with Mother to provide resources such as utilities, clothing, and groceries, but the resources were mismanaged.   The Agency had concerns that Mother was not meeting the children's needs; for example, an abscessed tooth was not treated in a timely manner and Child 4 was described as having the worst cradle cap the social worker had ever seen.

{¶4}   In March 2017, Father was incarcerated for domestic violence against Mother.   Mother told the Agency that she would not have contact with Father, but upon his release from jail, he immediately moved back into the family residence.   The Agency therefore filed a complaint for emergency custody of all four children on March 15, 2017.

The court found probable cause to believe the children were dependent/neglected children and placed them in the temporary custody of the Agency.

{¶5}   Children 1, 2, and 3 were placed together with one foster family and Child 4 was placed with a foster-to-adopt family via a kinship placement.   Other kinship placements were explored for Children 1, 2, and 3 but without success.

{¶6}   The family's ongoing caseworkers described Mother's unsuccessful efforts to work her case plan.

{¶7}   Mother's housing was not stable.   Mother lived in Cambridge when the children were removed, and then moved to an apartment in Lakeside Terrace in Byesville. She was evicted from that apartment in part due to bedbug infestation in February 2018. She went to live with her mother in the home of her mother's friend, but the friend would not allow the Agency to conduct home visits.   The Agency was unable to evaluate the suitability of the home.   Mother moved out and as of the date of the evidentiary hearing, the Agency was not aware of where she was living.

{¶8}   Mother did have visitation with the children after they were placed in the care of the Agency, which she successfully exercised for a period of time.   She started with supervised visits twice a week at the Agency and progressed to weekend home visits at her apartment.   The home visitation ended in October 2017 because the Agency received reports that the children were left unsupervised around a pond.   Mother also permitted her sister to watch the children when she was specifically instructed not to leave the children in aunt's care.

{¶9}   At that point the Agency's goal was still reunification, and supervised visitation resumed.  Progressive visitation continued until one of the children reported that

Mother sat on her chest because the child wouldn't say "I love you." When questioned, Mother said she was "just joking." The worker visited Mother's home and, although it was extremely warm inside, Child 4 wore a fleece zip-up and was very hot to the touch. Mother was told to change the child's clothing and to give the child fluids. After this visitation, the foster family took Child 4 to the emergency room for bug bites, which were found to be bedbug bites.

{¶10} The Agency confirmed with Mother's landlord that bedbugs were present in the apartment. Visitation again ceased until the bedbugs were eradicated: not only did Mother's apartment have to be cleared of bedbugs, but Mother had to be cleared as well. She could not participate in supervised visitation at the Agency until the Health Department found no evidence of bedbugs. Mother was advised of the bedbug issue and how to remedy it but did not take steps to obtain clearance from the Health Department until May 2018.

{¶11} In the meantime, Mother's use of methamphetamine apparently began around March 2018. Mother came to a visitation apparently under the influence and was drug-screened; the test was positive for methamphetamine. Mother was sent home and the visitation was cancelled. Mother later complained to her landlord about "robot spiders" and claimed unknown people were sneaking into the attic to steal the children's toys. These allegations were determined to be methamphetamine-induced hallucinations. Mother subsequently tested positive for methamphetamine on March 12, April 4, April 24, May 30, June 27, and September 10, 2018.

{¶12} Mother was ultimately non-compliant with case plan services. She did not complete drug treatment, did not go to a mental health counselor, failed to maintain stable

housing, and was frequently unemployed. At the beginning of the case, she worked for a temp agency, but by the time of the evidentiary hearing she was unemployed.

{¶13} The Agency's overall concerns with Mother include her questionable ability to protect the children and to meet their needs; illegal drug use; failure to follow through with services; and failure to provide a stable home. The Agency determined neither parent could be reunified with the children in a reasonable period of time. One six-month extension was given; progressive visitation was attempted but failed. The case plan was not completed. Mother's drug use continues and she would have to prove her ability to maintain sobriety for reunification. She has not taken any steps toward sobriety.

{¶14} The Agency maintained it made reasonable efforts at reunification. Several kinship options were investigated without success. The Agency made referrals for Mother to mental health and substance abuse counseling. A progressive visitation plan was implemented twice. The Agency bought basic household essentials for Mother when she was unable to provide her own. The Agency provided regular drug screening.

{¶15} On May 19, 2017, the trial court found the children to be dependent and continued the Agency's temporary custody. On July 2, 2017, the trial court held a dispositional hearing and by entry dated July 19, 2017 placed the children in the temporary custody of the Agency. A review hearing was held on November 13, 2017, and a six-month extension was granted on April 11, 2018 after an Annual Review Hearing. An amended case plan was filed on May 24, 2018 and approved and incorporated into a court order on June 14, 2018. On July 13, 2018, the Agency filed a motion to modify dispositional orders seeking permanent custody of Children 1, 2, and 3.

{¶16} A hearing was held on October 30, 2018, and by entry dated November 20, 2018, the trial court granted the Agency permanent custody of Children 1, 2, and 3.

{¶17} Mother raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶18} "THE COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE AGENCY WHEN NOT HAVING CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILD."

**ANALYSIS**

{¶19} In her sole assignment of error, Mother argues the trial court's decision to grant permanent custody of Children 1, 2, and 3 to the Agency is not supported by clear and convincing evidence of the best interests of the children. We disagree.

{¶20} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court

must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶21} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶22} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶23} Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody **and** that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. * * * *.

{¶24} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child.

### *R.C. 2151.414(B)(1)(d)*

{¶25} In the instant case, the trial court found that R.C. 2151.414(B)(1)(d) applies to the children, to wit, the children were in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. The children were placed in the temporary custody of the Agency on March 14, 2017, and temporary custody remained with the Agency continually until the evidentiary hearing on October 30, 2018. The caseworker testified at the hearing that as of that date, the children had been in the Agency's custody for 595 days.

{¶26} The trial court's finding is supported by clear and convincing evidence and upon review, we agree that R.C. 2151.414(B)(1)(d) is applicable to the facts of this case.

### *Best Interests*

{¶27} Pursuant to R.C. 2151.414(D)(1), in determining the best interests of a child in a permanent custody proceedings, the court shall consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. * * * *.

{¶28} The trial court noted Children 1, 2, and 3 have a strong bond with each other and with Father, although Father is also unable to meet their needs. Mother, however, has shown indifference to the children during monitored visitation and regressed in her case plan because she became addicted to methamphetamine and became homeless. Despite the Agency's assistance, Mother is not able to provide a safe home or meet the children's needs. The Agency's two attempts at progressive visitation with Mother ended unsuccessfully.

{¶29} We also note the guardian ad litem concluded it was in the best interest of the children to grant permanent custody to the Agency, acknowledging both parents had adequate time to complete their case plans but the children could not safely be returned to their care. The G.A.L. opined that Mother's drug use, lack of parenting skills, and

inability to provide a stable home would not be conducive to the permanency the children deserve.

{¶30} As noted supra, at the time of the evidentiary hearing the children were in the temporary custody of the Agency for 595 days. Children 1, 2, and 3 need and deserve legally secure permanent placement, which they would find upon an award of permanent custody to the Agency. The record is devoid of any other option short of permanent custody which would achieve this result. No family members have come forward successfully seeking placement of the children, and we agree with the trial court that neither biological parent will be able to provide a legally secure permanent placement. The parents were unable throughout the period of temporary custody to sufficiently remedy the conditions which led to removal of the children.

{¶31} While Mother points to past successes in her case plan, the evidence established she is not sober and is not able to maintain a stable home environment, conditions which have worsened as the case progressed. We agree that the evidence demonstrates that any harm of severing the parental bond is outweighed by the benefits of permanency. The record further demonstrates that the risks to the children which required their removal have not been alleviated.

{¶32} Upon this record, we find the trial court's decision that it was in the best interests of Children 1, 2, and 3 to be placed in the permanent custody of the Agency is supported by clear and convincing evidence.

{¶33} Mother's sole assignment of error is overruled.

## CONCLUSION

{¶34} Mother's sole assignment of error is overruled and the judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.